Second case is 20-7067 Bond v. Board of County Commissioners, Muskogee County, Oklahoma. Please proceed, counsel, for the appellant. Make your appearance and proceed. Thank you, Your Honor. This is Dan Small for the appellant. Good morning, Your Honors. As the Court's already aware, this is an appeal from a defense verdict that happened in the Eastern District in 2020. It's been our position, both before the trial, after the trial, during the trial, that the court erred and abused its discretion when it allowed evidence of settlement to come in in front of the jury. That evidence of settlement that was repeatedly laid out to the jury substantially affected the rights of the plaintiff. We based that on several different factors. One, in this case, as the Court's aware, we were ordered to a summary jury trial in this matter where evidence was presented, albeit there was no evidence presented in the summary jury trial of settlement with the co-defendant. Ms. Pullen, let me ask you about this, and I don't want to derail too much of the time, but, you know, I, you know, I was, and I don't mean this as any criticism, I understand, but I was a little taken aback by the references to a summary jury trial. As someone who has conducted a number of summary jury trials, you know, one of the things that I always told the litigants was, you know, this is part of the settlement negotiations. We're going to get a settlement conference after this. No one is permitted to mention any word of this other than we had a summary jury trial and potentially a violation of the rules to the trial judge. So, I was really taken aback, and I don't mean that's an overstatement. I was surprised that one of the arguments for prejudice was something that, to me, is an integral nature of of the mediation, the settlement process, which, as you know, is, you know, sacrosanct, that it's confidential. The whole point of a summary jury trial was for Judge Kim West to conduct the settlement conference afterwards. Just in response to that, Your Honor, this was the first time we'd ever been required to go through that process. The process, to me, at least the way that I've understood it in the past, is that really it's to more so to the plaintiff than the defendant to show the plaintiff to get into this reality of what your case is worth, and you've got this limited time to present it. But it's an open court proceeding. There's a jury that's been brought down that believes that this is a trial, and there are members of the public there spectating it. That's very different from a settlement conference where, as the court's aware, it's completely private, completely shielded from the public. But there could have been newspapers down there reporting on the summary jury trial. The court was open despite the COVID restrictions. There were restrictions in place, but it had nothing to do with the nature of the actual proceeding. And so I think to maintain this idea that a summary jury trial is this form of settlement that is sacred, and you can't talk about it, and you can't bring it up, it flies in the face of the reality of the situation, which is that this is an open proceeding, and jurors have been brought down here under the idea that this is a trial. Members of the public are there. Families are there watching the proceeding. The plaintiffs are there. The defendants are there. And their families are there. So I think just with respect to that process. I appreciate that. I was not aware of all of that. And so it is a unique process. I've never been through it before. But with that being said, I don't want to just simply say, hey, because the jury gave us $20 million in a summary jury trial, which the court's well aware of. It's an hour and a half presentation. We take deposition evidence to show it. But in that limited amount of time, it was clear to a jury, and not just a jury of six, but literally there were like 15 people who heard that case or 20 people ultimately who heard that case. And the group collectively came back at $20 million. Individual jurors came back at $20 million. Some individual jurors were in favor of the board, right? Excuse me, Your Honor. Some individual jurors were in favor of the board and were not willing to give $20 million. There were three of the 20, I believe, Your Honor, that went with the board. But I wanted to be clear to this court that during the defendant's summary presentation, we didn't object to them being incarcerated. All of these very, very prejudicial aspects that were precluded in the real jury trial were not precluded in the summary jury trial. And that probably puts a fine point on why relying on a summary jury trial for anything really doesn't add much value to anything. Because it's not a real trial. You get to do things in there that you don't get to do in a real trial. So what the predictive value of that is, is at least, as I see it, let me shift gears. I totally agree with you. But I think that this is a rare situation where we were ordered to do that process in advance. And when we're coming in and we're having to deal with a standard, how did it substantially affect the plaintiff's rights? It is a piece of evidence in the overall puzzle when you look at the case law, which I think is very on point with Rule 408 and 403. But it is a piece of the puzzle. I'm not solely relying on the fact that there was a summary jury trial. Here's how they came back. Every trial is different. Every jury is different. The court's well aware of that. I'm well aware of that. Let me shift you. Point taken. Let me shift you to the question of the district court finding that you had waived any objection to any argument that the defense counsel may have made in connection with their trial presentation. In other words, there are two discrete issues here. There's one, whether you waived an objection to the pretrial order's boundaries on the admission of the settlement evidence. And then there's a question of whether you waived an argument related to what the defense lawyer actually said at trial related to the settlement evidence, which you alleged, as I understood it below, exceeded the bounds of the pretrial order. Well, in your opening brief, I didn't see any direct challenge to the district court's finding of waiver as it relates to what went on in the trial. In other words, the district court agreed with you that you had preserved an objection to the pretrial order in this ability, but that there was no contemporaneous objection made at trial to how the defense lawyer used the settlement evidence. And so my question to you is, did I miss this in your opening brief? I mean, as recently as yesterday, the word waiver doesn't exist in your opening brief. And so the question would be, did you make a direct challenge to that? And if not, why haven't you waived any argument that you might make on appeal to what the defense lawyer did in trial? Well, initially, I'd like to address it. We certainly did not appeal the issue of waiver. The defendant did not appeal the issue of waiver as well. And so I don't think the issue of waiver in general is popularly before the court. Well, that's good because it's, I mean, the defense lawyer didn't have to appeal anything. I mean, it's on you as to whether that's an argument you're making. I'm trying to get, let me be clear now. So the boundaries of the dispute here then are focused on the pretrial order's allowance and admissibility of settlement evidence under the terms it defined. That's all we're talking about, right? Yes, Your Honor. That's what we're talking about, under the terms that were defined. But the problem with the terms that were defined is the defendants came in and said, hey, we want to use this because we don't want the jury to be confused. And we want to use this because there might be some kind of bias. But it was like a circular argument. There was never any specific statement about how in the don't even have to have the codefendant named to have the Monell liability. There was no explanation by the defendant in any of their positions. And there was no statement by the court in any of their rulings about specifically what they even meant about confusion to the jury and about bias to the jury. And during the presentation of the case, none of those issues came up. We were objective. This is much more extreme than what I ever thought we were talking about. Is that because, Mr. Spolin, that by definition, whether it is going to relate to a witness's bias, by definition, has to wait until that witness testifies. Otherwise, how could anyone know in advance whether evidence of the fact of settlement would relate to their credibility and whether or not it's confusing that the McCoys were not there at the defense table? Those are is it is your point that those are things that could not have been prognosticated in advance by Judge White until the actual evidence had unfolded? No, that's not the position. The position is that no issue of bias ever came up during the trial. There was never that because of what happened in trial. Right. And what we were saying was in the initial briefing, we've never had a defendant come in and have a request like this defendant did in the 20 years that I've been practicing. I've never had a defendant say, hey, we want to bring up settlement. We think it somehow is going to alleviate some kind of confusion that the jury might have. So you're saying that there was not an adequate basis made to support the pretrial order on either the bias or the confusion of jury front. Is that correct? Correct. And then that was laid out during the case when I'm telling the judge, Judge White, on the second day, look, this is not what the order was about. They're not using there's no confusion here by the jury. And so I think that with respect to the waiver issue, the fact that we had this brief and pretrial briefings, I think that it's the Alabama case. Let me get to the side from. Yes, it's well, it's the Douglas versus Alabama 380 US 415. An ample and timely objection, which brings an alleged error to the attention of the trial court is sufficient to preserve the claim for review. There's no legitimate interest is served by requiring the repetition of futile objections already rejected by the court and three repeated objections may affront the trial court or prejudice the jury beyond repair. Let me ask you about a couple of those points. So on the first one, with regard to the timeliness, when you would approach the bench at the end of day two, at that time, Miss Winkle had already been asked on cross-examination on day one, I think, about the fact of settlement, no objection, she her examination gets ended. She's, she's released. Patty Reese testifies on day two, about the fact of settlement, no objection. Her testimony is closed. And then the EMT driver is testifying on day two. And then at the end of day two, then you asked to approach the bench and say, this has all been, you know, come in and, and your pretrial order, Judge White has been abused. Let's say Judge White would have said, well, you're totally right. I want to cure that. How could he have cured that? Because how could it have been timely? Those two witnesses already are already home. I think he could have cured it with an easy instruction to the jury about that they're not allowed to consider settlement as far as liability goes. And when you look at objection timely, however, if you didn't object, not only when the question is raised, but you didn't even object before the witnesses were released. We did object before the trial. And that's what our position is with the briefing, Your Honor. I mean, this was extensively briefed. It was argued at multiple pretrials before this trial actually took place. I think it was clear. I think Judge White was clear that we had raised these issues prior to trial and that we have not waived these issues. And the defendant did not appeal Judge White's ruling that these issues had not been waived. Well, there's no reason that the defendant would. Let me back up for a second here. Is it then, if I try to crystallize what the gravamen of your contention is, would it be that there was no showing that would support the pretrial order that allowed for the admissibility of the settlement evidence, and that as a legal matter, as a matter of law, the argument related to bias and the argument related to confusion of juries, there was no factual predicate to support those arguments here. Is that it? Yes, that's it, Your Honor. Okay. And that if you look beyond even the factual predicate, if you look at the defendant's brief, and this is that, and I think this is really critical, if you look at the defendant's position in their briefing on the issue, and it's our appendix at 2560, they specifically state here, defendant board, this is their argument, is entitled and in fact intends to argue that any violation of decedent's constitutional rights were not caused by any policy procedure or custom of the defendant board, but were instead the fault of its former co-defendants. That was the whole purpose of their bringing up the settlement. We would do questions. We would show the underlying violation. Defense counsel would stand up and say, well, they were employees of McCoy's, correct? Yes. And McCoy's has settled, haven't they? Yes. That's how the whole case was defended. So the harder we lean on the underlying constitutional violation, all the defendant has to do is say, well, that's McCoy's and they've settled, right? Right. It completely, I will never, ever be in a position to settle with the co-defendant if this court were to rule that was an allowable use of settlement evidence. Wasn't there a jury instruction that specifically distinguished between the Monell liability of the county and the McCoy's? In other words, the jury would have been informed that the mere fact of the conduct in the McCoy's was wrongful, allegedly, that that didn't stop the jury from finding liability against the county. In other words, this claim of prejudice, I mean, the jury was instructed not to disregard that, right? Not on the settlement, your honor. They were not instructed on that. And I think that what's critical here is you've got a pool of jurors that are listening to this trial and all they're hearing is that these really, really bad people have already settled. And that's what the case was. That was the entire defense. They didn't provide a single bit of evidence, not one piece of evidence in this entire record to refute the fact that they should have known of the conditions that existed at that facility. They didn't provide a single piece of evidence to refute that. And they didn't have to, because all they did was sit there and say, look, we're not McCoy's. McCoy's are the bad guys and McCoy's has settled. Let me follow up just very briefly and then we're going to hear from Mr. Artis. But my one follow-up is to be clear, I'm not saying the instruction referenced settlement. What I'm saying is the instruction made clear that it did it not, a question, that there was a distinct basis to hold the county liable, irrespective, in other words, there were distinct Monell policy grounds under which the county could be found liable, irrespective of what the McCoy's or anybody else did. Didn't the instruction say something like that? The instructions talked about Monell liability and what had to be established. It did not at all address the idea that the jury's been told that these people settled. I didn't say that. I said, did the instructions make a distinction? Okay. As far as the Monell liability goes, there was an instruction that laid out what the jury had to find for Monell liability. My point with that regard, your honor, is that the defendant didn't provide a single piece of evidence to refute this idea that they should have known of the conditions that existed at that facility. They were contractually and legally obligated to know the conditions in that facility. They were contractually and legally obligated to read the minutes from these meetings that laid out all of these problems that were happening at this facility. The defense simply stood up there. I mean, I was sitting in the courtroom. I'm going to give you a minute of rebuttal, okay? Your time is over. Let's just stop now and hear from Mr. Artis. Go ahead, please. Good morning, your honors. Can you hear me? Yes. It's Andy Artis for the Board of County Commissioners. I would agree with courts that I believe that the plaintiff did not object contemporaneously to the fact of settlement for the purposes other than to avoid confusion or show bias. Plaintiff never argued at trial that the settlement was being mentioned for anything other than to show bias and to avoid confusion. And that was necessary so that the court could explore it. We could explore it. We could take testimony. We could look into it, these kinds of things. And he never objected to it at a time. And so now to be able to do it, he's waived it. And here's our argument. Counsel, let me jump in here. As I understand that there was a pretrial hearing and a pretrial order that was entered. And one of the issues was this question of admission of evidence of settlement. Is that correct? Yes. Okay. At the conclusion and at the time the pretrial order is set, did the trial court reserve for hearing at the time of trial as to how that evidence would come in? Or did he rule it during the pretrial order that the evidence was admissible? He did not make it absolutely clear either way, Your Honor. I don't believe. Well, then let me ask you this. During the trial, when the evidence came up of the first time any witness of a settlement, was there an objection made as to the admissibility of that evidence at that time? No. And in fact, never was there one on that issue. The only objection ever made was on day two. And it was more of an objection of, hey, he's mentioned it enough. And the judge disagreed. And then the judge said, I'll keep that under advisement, but you're free to bring it up again. And then they never, ever brought it again. And if they had brought it up and objected at times, like Mr. Smolin said, there could have been a jury instruction. Plaintiffs never asked for a jury instruction to explain anything to the jury if there was something that was wrong. And so he's waived it. And he hasn't raised any plain error in his brief. So he's waived that at all. And in fact, in closing argument, plaintiff's counsel mentioned the settlement, thus opening the door. So we believe that- He certainly didn't open- Well, that's true. I overstate that. But he did mention it as well. So I think that he has waived that argument. Wait, counsel, you keep saying he's waived it. But I just heard you say a minute ago that as to the second time the settlement came up, there was an objection made. Never during the trial or when witnesses were up. The only time you made an objection was on day two. It was after the jury was out. And it was not as to, hey, this is being offered for something other than for bias, or this is being offered for something other than confusion. It was just saying, hey, I think he said that enough. And I don't think you should say it again. And the judge said, I don't agree, but I'm listening to you. And what he said was, all I'm asking is, I think it's been done enough. And then the court said, I'm glad that you did. I will keep that in mind. And the inflation being there, hey, I've got an open mind to this. Raise it again if you need to, if you feel I'm going outside my order, or where he's going outside or doing anything. Raise it again, and he never did. Well, just- I'm sorry, Judge. Hold on. Go ahead. Just to be clear, there are two discrete issues here. There's one related to what went on during the trial. There's another related to whether there was a preserved objection to the admission of settlement evidence, period, that the court did in the pretrial order. And as it relates to that, the district court found that they had preserved that objection. And do you contest that? Yes, we did contest that in the brief. And the reason why- You contested both as to 408 and 403, or both? Yes, both. Yes, Your Honor. Yes. And one of the reasons is because when you're talking about bias, that's something that has to be- you have to put witnesses on the stand to see if there is bias. And the same thing with confusion. You've got to have them on the stand to see if there's confusion. And so you really have to have them there so a contemporary objection can be made. It's kind of getting me a little bit confused as to what went on. On the second day, we talked about the first day settlement. On the second day, did the plaintiff renew their objections made as to the written pretrial order that it could come in? No, Your Honor, that was never mentioned. Okay, well, as it relates to, for a moment, if- as I understand Mr. Smolin's objection, as we talked about today, and what he's saying here is simply that you didn't make a sufficient showing. I get the notion that bias- one could argue that you need to evaluate bias in the trial conduct piece is waived. But as I understand it, his argument is that you did not make a sufficient showing on paper that bias and confusion of juries were valid considerations in this case. In other words, the showing that you made was legally insufficient because you did not present it. And so as it relates to that issue and crystallized that way, what is your response? Your Honor, I believe we did make that- we did make it very clear for the reason for it. I mean, we had almost every witness at trial was McCoy's or McCoy's employees. Plaintiff was basically trying this case like a vicarious liability case. Patty Reese was the- was the program manager for McCoy's. Ron Morris was the one who took the 911 call. Marietta Winkle was a McCoy's supervisor. Anthony Cornwell was a McCoy's employee. J. Ed Lang was a shift supervisor. Angela Miller was a McCoy's employee. Dr. Ash was their expert who talked about the policies. Denny Hoover was the McCoy's person who- or was the person McCoy's hired to train on suicide. Cindy Perkins was director. Brandon Miller was the employee. And Dorothy Brown was a McCoy's employee as well. Just about every one of the witnesses were McCoy's and all of the issues were on McCoy's. And the issue of settlement did not go at all to the disputed claim in this case because this was a Monell action. And the disputed claim in this case was how much did the board know about McCoy's supervisory- supervision training and staffing and how much should the board have known about it? Okay. Okay. And let me tease that out a little bit. Okay. All you- you recited a number of McCoy witnesses, a lot of McCoy witnesses that testified at the trial. So I take it your argument then and now as it relates to jury confusion is the jury would have said, why are these people- why aren't these people being sued as well? And- and question mark and- and- and raising the settlement would allow to answer that question. Is that right? That is correct. Okay. Well, what- what I want to tease out a little bit more is the bias point. What- what was- what- what showing did you make in the district court? And what is the nature of the bias that you were trying to counteract by the settlement evidence? Well, the- our opinion at- at trial was that Marietta, Jackie Winkle, Jared Lang, Cindy Perkins, and Brandon Miller, and Patty Reese were- were being- were exhibiting bias towards us during the way they were answering our questions, the way I had to cross-examine them. It was exhibiting bias also for the confusion issue that we- which I already talked about. They were exhibiting bias in your favor, you're saying? And so you- No, I- I don't think- I don't think they were very favorable towards us. And- and that's the point. If Mr. Smolin disagreed with that and felt that that wasn't the case, he needed to object at that time and he didn't. Therefore, he waived it. Well, forgive me. I'm trying to make sure I understand. What is the- what- what bias were you trying to counteract? I mean, was it bias in the sense that because they settled, they had- they had no- they had no constraint in lobbing bombs at you? Or was- what was the nature of the bias that- that this settlement evidence was designed to counteract? Well, the- the defense is- the defense in the case was that the board was not aware of- I mean, plaint- the way plaintiff tried the case was that McCoy's and their employees were very, very bad. And our defense was the board did not have notice of that. They- they didn't know about that and they were not deliberately indifferent in not knowing that. And so in my- my examination of them or cross-examination of all of them, it was showing what they did that was bad and they- and then the- and exhibiting their blame-shifting and how they were avoiding those kinds of things and trying to shift it. And so in my opinion, they were- and- and how I had to cross-examine them many times. And so in my opinion, those- those things were showing their bias. However, plaintiff never objected to disagree and- and to- to flesh that out. It was showing the witness's bias in the sense that- that they were trying to shift the blame from themselves to you because the plaintiff was trying to show that they were bad to them- to- to their training and to their supervision. Okay. All right. By McCoy's or the board? Well, by the- by McCoy's and plaintiff was trying to say that by- by- just by osmosis, that had to be the board. That's- I mean, they were trying to say it was by vicarious liability, which was making it very confusing. So let me follow up on Judge Holmes' question because I still really, frankly, understand the logic of your answer to Judge Holmes. Nor do I. If- if- if, say, Ms. Winkle or Ms. Reese are saying, McCoy's was terrible. They didn't train me. I don't understand how that can be translated to bias against the board because your defense is the board didn't know anything about how bad McCoy's were and Ms. Reese and Ms. Winkle and these other McCoy's witnesses weren't saying that you did know about this or should have known. So I don't understand what bias you were trying to counteract, even if it were relevant to bias. I don't- I don't understand how you're saying that they had displayed bias, other than maybe their tone with you was unpleasant or something like that. Well, I think the fact- the fact that they- that they had settled showed that they were maybe posing up with the plaintiff's counsel as well in this. Okay, and let's focus on that. That would be an argument of bias, potentially. But, I mean, did you trot that out to the district court? I don't- I don't have that in front of me right now. Did you trot that argument- that theory out to the district court? And is that- is that an argument that you're making? I mean, that argument, at least to me, has some logic to it. I believe we did bring that up in our brief to the court when- when they heard it. And, again, that's something that would have to have been fleshed out at trial. And that's something that I thought we were bringing out in trial, but no- but no objections to it. So there- so there was nothing- nothing there to deal with. And so it's- in my opinion, it's been weighed. Well, counsel, let me get in here at this point in regards to the bias that you- you're saying that you were trying to show. Because let me read to you the quote that I've got here. It says, everything Mr. Smolin is talking about has to do with Jared Lang, Marietta Winkle, and Jackie Winkle, Brandon Miller, and Angela Miller. Those four people, and then McCloy's, these are the people who did the wrong in this case. These are the people who didn't do what they were supposed to do, and these people have settled with the plaintiff. Now, I can't find any language that's more clear to me that you were using this for purposes of showing settlement and pointing to the other people as being the bad guys. Where's the bias against you in regards to these statements as to the admissibility of settlement? Well, it was really with their demeanor on the stand, and also it has to do with the confusion. With the confusion. Where's the confusion in what you said there, counsel? I mean, you're saying that you offered all of that to support the fact that they would be biased against you, and yet, to me, the language you use clearly shows that you were using this as a settlement, pointing to those people who settled as being the real bad guys, and it had nothing to do with the board. But the underlying issue was not the claim in dispute, was whether there was an underlying constitutional violation. He doesn't read the rest of the closing argument. The real issue was what did the board know, and what should they have known, and did they act with deliberate indifference? And the county commissioners got on the stand and were very convincing, and I think won the case because they explained how they didn't know what was going on there, and they shouldn't have known what was going on there. And so, I feel like the confusion of not having McCoy's there, who wrote the policies, and who hired the four employees, and who trained the four employees, and who supervised the employees, the board didn't do any of that. Those were the people who needed, the jury needed to know why they weren't there, and I think I've run out of time. Any further questions? Judge Holman, if you don't mind, I just have one. No, of course not. Thank you very much. I just have one question. Since this is kind of an interesting situation, since Judge White has said that this was not waived, and putting aside the issue, because I agree with Judge Holmes, the argument is for a permanence of alternative grant. I don't think there needed to be a cross-appeal, but you have, it seems to me, a strong argument that it wasn't preserved. The wrinkle in this case, unlike most, is the trial judge has, who would know better than anyone else, whether or please turn your audio off, Mr. Haskins, thanks. The trial judge would know better than anyone whether a contemporaneous objection would have been futile, and whether the pretrial ruling that he had made would have ever been altered, and he said that it was preserved, and so it doesn't, wouldn't it be sort of odd for us to say, well, no, you, Judge White, you said the opposite, but this may have affected your ruling if there had been a contemporaneous objection, so even though you think it was preserved, we don't think it was preserved. It's an odd situation. Could you just address that? Well, your honor, he said to the extent the board strayed from the limited purposes, which is to avoid confusion and prevent bias, plaintiff did not contemporaneously object and has waived any objection, and so I take that to be the fact that he didn't object at trial to, hey, you're, to us going outside of what the bias was or what the confusion was at trial, that he has waived that, and so I think. What about the 408 and 403 objections? Well, I think, I think Judge White's opinion, I mean, you, Judge White clearly denied their motion for new trial. He, you know, he says that it didn't go to the, to the disputed claim, which was how much the county, how much the county knew or how much the county should have known, and plaintiff wasn't prejudiced because of the fact the settlement tended to prove McCoy's and constitutional, violated Wood's constitution. That was an element that plaintiff had to prove in the first place, and plaintiff didn't dispute it. That was never an element. It was always what did the board know and what did the board do. Sure. One of the things that he did not say, the question is about what he did not say, and he did not say in denying the motion to reconsider that it was waived, and so I'm going to deny the motion for a new trial because it was waived, and that's, and that's really what I'm trying to get at. Well, but he also, you know, held that, that, that there wasn't, that the new trial can only be granted if it can be reasonably concluded that without evidence there would be, there would have been, without, without the evidence, there would have been a contrary result, and, and then, but the, but the facts show that wrote the policy that McCoy's hired all these people, that the policies to do 15-minute checks were in place, and that if they had only been followed, there wouldn't have been, he wouldn't have died, that they ran the business for 19 years without any suicides, and that the five, last five years of inspections were all stellar, and that the county commissioners testified very convincingly that they had no indication McCoy's was doing a bad job prior to Billy Wood's death, and so I don't think the court abuses discretion in denying the motion for a new trial. Thank you, Mr. Artisan. Thank you, Judge Holmes for your time. Of course. Mr. Smolin, we'll give you five minutes in rebuttal. I plan to give you an initial minute, and we'll just round it to five, and you don't have to take it, but you have it if you want. I'll be brief. I would like to point out, because I believe Judge, I believe it was Judge Baldock that had asked, or maybe Judge Bacharach had asked, was this the type of ruling that the court had made that was subject to change down the road? I wanted to point the court's attention to our appendix at 5005 in the footnote. Judge White, in his order, specifically states, Plaintiff's pre-trial objection preserved the ruling because it was adequately presented to the court, was the type of issue that can be finally decided in a pre-trial hearing, and was ruled upon definitively. And he cites to Pandit versus American Honda Motor Company, 82F3rd376. I think that goes right to what this panel was asking. Was this the type of ruling that was made at a pre-trial where we were told specifically the decision has been made? We don't need to hear future things. I mean, we've tried a lot of cases, and I'm used to the language of a court saying, look, I'm really not going to rule on this right now. We're going to kick it down the road. Let's see how the testimony comes out. Let's see what comes out. That was not this case. Well, that wasn't this case, and to Judge Bacharach's point, that makes it a little how the issue is postured for us to decide. It seems to me, since the court's saying, unless we find that the court, you know, we affirm on other grounds finding waiver, and we disagree with the district court, which we can, but let's assume for the moment we're going to accept what the district court said, then the way this case is postured, it seems to me, is basically, did the defendant make a sufficient showing as it relates to its theories for admission of the settlement evidence on paper? Did it do that to support the district court's decision? And that's it. And that is absolutely the way to view the case as well, Your Honor. Okay. All right. We never felt like there was any showing. It was just a statement, like a conclusion. Like, well, the jury's going to be confused, and the jury's going to be biased, and of course, they're going to be biased and confused, but with no explanation of what they're even talking about in that regard. And so, I think that you have a... And then additionally, Judge Baldock, you had asked about whether we had continued to raise the objection. We did, in fact, raise that objection at the end of day two. There's a transcript of it in our briefing at page 15 and 16. And specifically, you know, I'm just trying to be respectful to the trial judge at this point, and to say, Judge, I respect your opinion. I don't agree with it, but this is over the top. And I felt like it never... Obviously, based on the briefing, settlement should have never come up in this case, ever. And we have so many cases that involve a governmental entity, and then a private company has come in and contracted with that governmental entity. The Burke versus Regalado case that's been cited by both sides heavily is one of our cases. That case involved Tulsa County in the jail, and it also involved a private medical provider. That private medical provider was settled out of that case three years before it went to jury trial against the county. If I had known that in that case, the defendant was going to get to bring up the fact that there was a co-defendant, and hey, they did all these bad things, we agree with plaintiffs, they did all these bad things, but they've paid, they've settled. We would have never settled with the co-defendant. It completely prejudiced the plaintiff. And obviously, that's why 408 exists. If 408 exists, it's for this very purpose. Just like Judge Walton said in the closing, it was clear the way the defendants were using it. If they really felt like... Take a breath, counsel. I got a question for you. That's all right. I get fired up about this one. Well, I want to go back to what we were talking about at the very beginning in connection with the summary jury trial. If we don't even consider or even look at that, isn't there still a basis that we could find the admissibility or unadmissibility of the settlement agreement? Absolutely. Absolutely. And that's what I... Just to Judge Holmes and Judge Becker, who raised that issue, I want to be clear. I certainly wasn't trying to violate any court instruction on it, but you rarely have a piece of evidence like that to at least try to show the court, look, here's how some people viewed this case when they didn't hear about settlement. And of course, it's not the end-all, be-all of evidence that this was materially altered the outcome, but there's enough cases that talk about why 408 and why 403 prevents settlement, that in the way it affects a jury, that the jury is going to have impressions like, hey, I wonder if they got 20 million from these guys. They don't even know how much they got, right? But they, in their mind, can envision all kinds of things. You've answered my question. Thank you. All right. Case is submitted. Thank you, Counsel Bregard. Thank you. Thank you, Your Honor.